IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| STATE OF INDIANA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-CV-3556 |
| | ) | |
| FRANCISCAN ALLIANCE, INC., d/b/a | ) | |
| FRANCISCAN HEALTH CROWN POINT | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

The State of Indiana, by the Office of the Attorney General's Medicaid Fraud Control Unit, files this Complaint against Franciscan Alliance, Inc. d/b/a Franciscan Health Crown Point (FRANCISCAN). This case involves a fraud on the Indiana Medicaid program for nursing services which FRANCISCAN claims to have provided and was paid to provide, but which were provided by Kathleen M. Camp (CAMP), a person who did not have a license to practice nursing during the relevant time period. The State seeks to recover damages and penalties under the Indiana Medicaid False Claims and Whistleblower Protection Act (hereinafter the "IMFCA"), Ind. Code § 5-11-5.7-1 *et seq.* and common law. The State sets forth below that FRANCISCAN routinely billed Indiana Medicaid for nursing services provided by CAMP when CAMP practiced nursing without a valid nursing license for over two years, in violation of Indiana nursing regulations and criminal law.

### I. Parties, Jurisdiction, and Venue

1. The Indiana Medicaid program is formally known as the Indiana Health Coverage Programs (IHCP). It is administered by the Indiana Family and Social Services Administration (FSSA) using federal and state taxpayer funds. Indiana Medicaid pays for

services provided by registered nurses and billed as nursing services. 405 Ind. Admin. Code § 1-11.5-1(c). Providers must first undergo an enrollment process and execute a provider agreement in which they agree to abide by the program's rules and regulations. An approved provider receives a provider manual that details the rules and regulations of Indiana Medicaid and provides instruction on how to appropriately bill for services. Approved providers also receive periodic "bulletins" from Indiana Medicaid that are designed to remind providers of existing regulations or inform them of any changes.

2. Pursuant to Defendant's provider agreements, Defendant may only bill for services and received Medicaid funds for such services if they comply with state and federal laws, and comply with program guidance found in provider manuals and bulletins.

3. FRANCISCAN registered as an Indiana domestic nonprofit corporation with the Indiana Secretary of State on September 19, 1974 with a principle place of business at 1515 Dragoon Trail, Mishawaka, Indiana 46544. Kevin D. Leahy is FRANCISCAN's registered agent. The Indiana Secretary of State's website lists FRANCISCAN's business as "Active."

4. FRANCISCAN has undergone several recent name changes, and was formerly known as both Franciscan St. Anthony Health – Crown Point and St. Anthony Medical Center of Crown Point.

5. FRANCISCAN did business as an inpatient hospital facility enrolled in Indiana Medicaid from 2008 through 2017 under provider number 200324860A. At all relevant times, FRANCISCAN had a Medicaid provider address at 1201 S Main Street, Crown Point, Indiana 46307.

## II. Statement of Facts

6. Indiana Medicaid reimburses providers for RN services. Reimbursement may be sought using the procedure codes for nursing services. Inpatient services rendered in hospitals and nursing homes are reimbursable by Indiana Medicaid and include a component of the services rendered by LPN and RN licensed professionals. 405 Ind. Admin. Code 5-22-2.

7. The Office of the Indiana Attorney General, Medicaid Fraud Control Unit (MFCU) has authority under Ind. Code § 4-6-10-1.5 to investigate Medicaid fraud in accordance with 42 U.S.C. § 1396 *et seq.*

8. MFCU conducted an investigation into nursing services rendered by CAMP to Indiana Medicaid members at FRANCISCAN.

9. FRANCISCAN's employee handbook indicates services are only to be provided by licensed professionals. To enforce this mandate, any employee who becomes unlicensed or otherwise encounters licensure issues will be suspended, discharged, or reclassified pending resolution of the licensure issues.

10. CAMP failed to renew her Indiana Registered Nursing license with the Indiana State Board of Nursing (Board) before October 31, 2015. As such, CAMP did not have a valid license to practice on November 1, 2015 pursuant to Ind. Code § 25-23-1-16.1(a).

11. CAMP's Indiana Registered Nursing license was reinstated on May 22, 2018, by the Board. When applying to renew her license after discovering it lapsed, CAMP admitted in a letter to the Board that she forgot to renew her license and practiced as an RN without a valid license for two (2) years.

12. In CAMP's 2016 FRANCISCAN performance evaluation, FRANCISCAN indicates CAMP provided her renewed RN license to FRANCISCAN prior to CAMP's annual evaluation.

13. In CAMP's 2017 FRANCISCAN performance evaluation, FRANCISCAN indicates CAMP provided her renewed RN license to FRANCISCAN prior to CAMP's annual evaluation.

14. Per FRANCISCAN's Indiana Medicaid Provider Agreement, FRANCISCAN's Indiana Medicaid member patients' medical records must be stored and maintained so as to be available for FSSA in the event of an audit.

15. Per FRANCISCAN's Indiana Medicaid Provider Agreement, FRANCISCAN must continually comply with all enrollment requirements established under rules adopted by FSSA as a condition of payment.

16. Per FRANCISCAN's Indiana Medicaid Provider Agreement, FRANCISCAN must continually comply with all federal and state statutes and regulations pertaining to the Indiana Medicaid Program as a condition of payment.

17. Per FRANCISCAN's Indiana Medicaid Provider Agreement, FRANCISCAN must continually meet the state and federal licensure, certification, or other regulatory requirements for FRANCISCAN's specialty as a condition of payment.

18. CAMP continued to practice as an RN, and FRANCISCAN continued to bill Indiana Medicaid for RN services provided by CAMP, from November 1, 2015 through November 22, 2017.

19. For example, CAMP provided nursing services to Patient TN, an Indiana Medicaid member, at FRANCISCAN while CAMP held an invalid Indiana RN license.

20. In total, Defendant was paid $204.26 by Indiana Medicaid for the treatment of Patient TN on December 16, 2015. Part of which was related to nursing services rendered by CAMP.

21. On or about December 16, 2015, CAMP signed Patient TN's medical record as "Camp, Kathleen M., RN," indicating CAMP reviewed Patient TN's medical and surgical history.

22. On or about December 16, 2015, CAMP signed Patient TN's medical record as "Camp, Kathleen M., RN," indicating CAMP ordered the following for Patient TN:
    - Paint assessment;
    - Vital signs;
    - Prenatal vitamin without Calcium #5-Iron-FA capsule;
    - OP obstetrics assessment and triage;
    - Urinalysis;
    - Fetal nonstress test;
    - Tylenol; and
    - Urine drug screen.

23. On or about December 16, 2015, CAMP signed Patient TN's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:
    - Vital signs;
    - Shock index score;
    - Obstetrics vitals;
    - Pain management;

- Fetal heart rate;
- Uterine activity;
- Cervical exam; and
- Fetal nonstress test.

24. For example, CAMP provided nursing services to Patient AC, an Indiana Medicaid member, at FRANCISCAN while CAMP held an invalid Indiana RN license.

25. In total, Defendant was paid $103.85 by Indiana Medicaid for the treatment of Patient AC on February 13 and March 30, 2016. Part of which was related to nursing services rendered by CAMP.

26. On or about February 13, 2016, CAMP signed Patient AC's medical record as "Camp, Kathleen M., RN," indicating CAMP ordered penicillin and Benadryl for Patient AC.

27. On or about February 13, 2016, CAMP signed Patient AC's medical record as "Camp, Kathleen M., RN," indicating CAMP administered the following medications to Patient AC:
- Intravenous Benadryl;
- Intravenous lactated Ringer's infusion;
- Penicillin; and
- An epidural.

28. On or about February 13, 2016, CAMP signed Patient AC's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:
- Vital signs;

- Pain score;
- Obstetrics vitals;
- Fetal heart rate;
- Uterine activity;
- Membrane status; and
- Cervical exam.

29. On or about March 30, 2016, CAMP signed Patient AC's medical record as "Camp, Kathleen M., RN," indicating CAMP educated Patient AC on the following topics:

- Pain medication actions and side effects;
- Pain control; and
- Pain rating scale.

30. On or about March 30, 2016, while caring for Patient AC at FRANCISCAN, CAMP signed Patient AC's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:

- Vital signs;
- Pain score;
- Shock index score;
- Obstetrics vitals;
- Fetal heart rate;
- Cervical exam;
- Medication changes;
- IP vital signs;

- Uterine activity; and
- Membrane status.

31. For example, CAMP provided nursing services to Patient JS, an Indiana Medicaid member, at FRANCISCAN while CAMP held an invalid Indiana RN license.

32. In total, Defendant was paid $5,483.92 by Indiana Medicaid for the treatment of Patient JS on February 5, 2016. Part of which was related to nursing services rendered by CAMP.

33. On or about February 5, 2016, CAMP signed Patient JS's medical record as "Camp, Kathleen M., RN," indicating CAMP administered the following medications:
- Peripheral IV;
- Bicitra;
- Lactated Ringers infusion; and
- Scopolamine patch.

34. For example, CAMP provided nursing services to Patient KA, an Indiana Medicaid member, at FRANCISCAN while CAMP held an invalid Indiana RN license.

35. In total, Defendant was paid $5,483.92 by Indiana Medicaid for the treatment of Patient KA on February 5, 2016. Part of which was related to nursing services rendered by CAMP.

36. On or about February 5, 2016, CAMP signed Patient KA's medical record as "Camp, Kathleen M., RN," indicating Camp administered the following medications to Patient KA:
- Anesthesia/MAR;
- Peripheral IV; and

- Pitocin.

37. On or about February 5, 2016, CAMP signed Patient KA's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:

- Vital Signs;
- Pain Assessment;
- Neurological Assessment; and
- Oxygen Protocol.

38. For example, CAMP provided nursing services to Patient BC, an Indiana Medicaid member, at FRANCISCAN while CAMP held an invalid Indiana RN license.

39. In total, Defendant was paid $3,914.40 by Indiana Medicaid for the treatment of Patient BC on February 6, 2016. Part of which was related to nursing services rendered by CAMP.

40. On or about February 6, 2016, CAMP signed BC's medical record as "Camp, Kathleen M., RN," indicating CAMP fulfilled and recorded the inpatient admittance order for Patient BC.

41. On or about February 6, 2016, CAMP signed BC's medical record as "Camp, Kathleen M., RN," indicating CAMP was the OB Examiner for Patient BC.

42. On or about February 6, 2016, CAMP signed Patient BC's medical record as "Camp, Kathleen M., RN," indicating Camp administered the following medications to Patient BC:

- Lactated Ringers infusion;
- Lidocaine injections;

- Butorphanol injections
- Peripheral IV;
- Penicillin G Potassium injections;
- Sodium Chloride;
- Pitocin;
- Diphenhydramine;
- Naloxone; and
- Bupivacaine.

43. On or about February 6, 2016, CAMP signed Patient BC's medical record as "Camp, Kathleen M., RN," indicating CAMP provided the following services:

- Urine Drug Screen;
- Complete Blood Count;
- Syphilis Screen;
- SGC DNA Amp Probe with Pap;
- HIV Screen;
- Blood Group
- RH Type
- Rubella IGG
- Chlamydia DNA Amp Probe;
- Indirect Coombs Test; and
- Group B streptococcus carrier, +RV culture, currently pregnant.

44. On or about September 30, 2016, CAMP signed Patient EL's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:

- Vital Signs;
- Pain Assessment;
- Neurological Assessment; and
- Oxygen Protocol.

45. On or about September 30, 2016, CAMP signed Patient EL's medical record as "Camp, Kathleen M., RN," indicating CAMP measured the following for diagnostic and screening purposes:

- Fetal heart rate;
- Uterine activity;
- Fetal nonstress test;
- Shock index score; and
- Obstetrics vitals.

**Relevant Law**

**Indiana Medicaid False Claims and Whistleblower Protection Act**

46. The IMFCA provides that a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement that is material to a false or fraudulent claim" is "liable to the state for a civil penalty … and for up to three (3) times the amount of damages sustained by the state." I.C. § 5-11-5.7-2(a). In addition,

a person who violates the IMFCA is liable to the State for the costs of a civil action brought to redress the violation. *Id.*

47. The IMFCA applies to false or fraudulent claims or statements submitted to the Indiana Medicaid program on or after the IMFCA's effective date. *See* I.C. § 5-11-5.7-1(a). The terms "knowing" and "knowingly" mean that a person "(A) has actual knowledge of the information; (B) acts in deliberate ignorance of the truth or falsity of the information; or (C) acts in reckless disregard of the truth or falsity of the information." I.C. § 5-11-5.7-1(b)(4). These terms "require[] no proof of specific intent to defraud." *Id.* A false or fraudulent statement is "material" if it "ha[s] a natural tendency to influence, or be capable of influencing, the receipt of money or property." I.C. § 5-11-5.7-1(b)(5).

48. Franciscan knew or should have known that Camp had to renew her license every two years, was required under regulations to have in place procedures to ensure her license was valid and current, and acted in reckless disregard in the truth or falsity of statements regarding the status of her license. Franciscan's failure to observe the rules regarding its licensure with respect to Camp tainted each claim in which a reimbursement was sought that involved services provided by Camp.

- IMPROPER PAYMENTS

49. Indiana Code Chapter 12-15-23 provides that the Attorney General may bring a civil action to recover overpayments by the Indiana Medicaid program. I.C. § 12-15-23-8. The MFCU, established within the Office of Attorney General, has authority to investigate and determine such overpayments. *See* § I.C. 4-6-10-1 *et seq.*; I.C. § 12-15-23-7. If the Court finds in favor of the State in a civil action brought by the Attorney

General, the Court may do any combination of the following: award treble damages, assess a civil penalty, or order the provider to reimburse the Attorney General for the reasonable costs of the Attorney General's investigation and enforcement action. I.C. § 12-15-23-8(a). However, the Court may order the provider to pay a civil penalty or reimburse the State for costs of its investigation and enforcement action "only … if the provider knew or had reason to know that an item or a service was not provided as claimed." I.C. § 12-15-23-8(b).

- HOSPITAL LICENSURE RULES

50. All hospitals that wish to participate in the Indiana Medicaid program must comply with all applicable federal, state, and local laws and rules and is required to maintain licensure for all nursing services. 410 IAC 15-1.2-1.

51. Hospitals must have organized Nursing services that are furnished or supervised by a registered nurse. Those nursing services shall have: adequate numbers of licensed registered nurses and have a procedure to ensure that hospital nursing personnel, have valid and current licenses. 410 IAC 15-1.5-6.

52. Registered nurse means an individual licensed under IC 25-23-1. 410 IAC 15-1.1-19.

- NURSING LICENSING LAW

53. In Indiana, only a person who holds a license to practice as a registered nurse shall practice as, advertise as, or assume the title of "registered nurse" or the abbreviation "R.N." I.C. § 25-23-1-11(f). Further, a license to practice as a registered nurse expires on October 31 in each odd-numbered year, and failure to renew the license on or before the expiration date will automatically render the license invalid. I.C. § 25-23-1-16.1(a).

13

54. A person commits a Class B misdemeanor when they practice nursing as a registered nurse unless licensed to do so, or practices nursing during the time the person's license is suspended or revoked. I.C. § 25-23-1-27(3) and (5). In Indiana, Class B misdemeanors are punishable by not more than one hundred eighty (180) days in jail and/or a fine of not more than $1,000. I.C. § 35-50-3-3.

55. FSSA regulations provide that reimbursement for physician services, limited license practitioner services, and nonphysician practitioner services is contingent upon maintenance of state licensure and conformance with FSSA's provider agreement. 405 IAC 1-11.5-1(a). Further, the Office of Medicaid Policy and Planning is instructed to deny any claims arising out of any act or practice prohibited by FSSA. 405 IAC 1-1-4(a)(7).

## IV. Counts Alleged

### Count One: Violation of the IMFCA

56. FRANCISCAN knowingly presented false or fraudulent claims to Indiana Medicaid for payment or approval. To-wit: for each and every Indiana Medicaid member which FRANCISCAN billed for nursing services from 10/31/2015 through 11/26/2017, and which CAMP signed her name on the medical record as "Camp, Kathleen M., RN," FRANCISCAN knowingly submitted claims for reimbursement for nursing services provided by CAMP while having actual knowledge of, or acting in deliberate ignorance or reckless disregard of, CAMP's invalid nursing license.

### Count Two: Breach of Contract

57. FRANCISCAN's Provider Agreement is a contract with the State which creates contractual obligations on the side of FRANCISCAN in exchange for payment by the State. FRANCISCAN submitted payment requests to the State of Indiana for services

provided by an individual who was practicing nursing without a license. According to the Provider Agreement, a condition of payment for services is that the services rendered not violate any state or federal law. When a Defendant breaches an obligation in a contract resulting in damages, said defendant breached the contract. *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 461 (Ind. Ct. App. 19080). The State may recover damages for Defendant's breach of contract.

### Count Three: Unjust Enrichment

58. Although the FRANCISCAN's Provider Agreement is a contract with the State, a Medicaid provider agreement creates statutory, not contractual, rights. *See United States ex rel. Roberts v. Aging Care Home Health*, 474 F. Supp.2d 810, 820 (W.D. La. 2007) (stating that "Medicare Provider Agreements create statutory, not contractual, rights"). The State may recover, as restitution for unjust enrichment, a Medicaid overpayment where the provider's payment has exceeded that required by the provider agreement. *Community Care Centers, Inc. v. Sullivan,* 701 N.E.2d 1234, 1239-43 (Ind. Ct. App. 1998)*, trans. denied* (affirming summary judgment to the State on its claim for restitution).

### VI. <u>Prayer for Relief</u>

**WHEREFORE**, the State of Indiana requests that this Court: enter judgment for the State and against Defendants for three times the Medicaid overpayment amount proven at trial; and that it impose the statutory penalties required by I.C. § 5-11-5.7-2 for each false claim.

Alternatively, this Court should, at least, enter judgment in favor of the State and against Defendants for the Medicaid overpayment amount plus interest; and enter judgment for the

reasonable costs of the Attorney General's investigation and enforcement action pursuant to I.C. § 12-25-23-8(a) and (b).

Alternatively, this Court should, at least, enter judgment in favor of the State and against Defendant for the value received by Defendant for payments received for services performed by CAMP, in breach of the Medicaid Provider Agreement.

The State of Indiana also requests all other just and proper relief.

Respectfully submitted,

CURTIS T. HILL, JR.
Attorney General of Indiana
Attorney No. 13999-20

By: /s/ Andrew L. Owen
     Andrew L. Owen
     Deputy Attorney General
     Attorney No. 34143-49

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the foregoing was filed electronically on this 12th day of December, 2018, and is available to all parties of record through the Court's electronic filing system.
.

              <u>/s/ Andrew Lloyd Owen</u>
              Andrew Lloyd Owen
              Deputy Attorney General